IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

**FILED**

JAN 0 7 2005

LARRY W. PROPES, CLERK
CHARLESTON, SC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: __9:05- 9__ |
| | : | 18 U.S.C. § 1341 |
| | : | 18 U.S.C. § 2 |
| v. | : | |
| ROBERT DAVIDS, | : | |
| Defendant. | : | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

**BACKGROUND**

1.      Medical Manager Corporation was formed in July 1996. Its primary business was the sales, marketing, and development of computer software to assist physicians and other health care providers manage their health care practices. In or about February 1997, Medical Manager Corporation conducted an initial public offering (an "IPO") and its shares began to be publicly traded under the symbol MMGR on the National Association of Securities Dealers Automatic Quotation National Market System (the "NASDAQ"), an electronic securities market administered by the National

1



Association of Securities Dealers.

2.   In or about July 1999, Medical Manager Corporation was acquired by and became a wholly owned subsidiary of Synetic, Inc. Synetic assumed the corporate name of Medical Manager Corporation and changed the name of the former Medical Manager Corporation to Medical Manager Health Systems, Inc. The common stock of the new Medical Manager Corporation was traded on the NASDAQ under the symbol MMGR. Medical Manager Corporation and its wholly owned subsidiary Medical Manager Health Systems, Inc, are referred to herein collectively as "Medical Manager."

3.   In or about September 2000, Medical Manager was acquired by and became a wholly owned subsidiary of Healtheon WebMD Corporation. After the acquisition, Healtheon WebMD changed its name to WebMD Corporation ("WebMD"). WebMD's stock is publicly traded on the NASDAQ under the symbol HLTH.

4.   Immediately following its initial public offering in 1997, Medical Manager pursued a strategy of fueling its earnings growth through frequent acquisitions of independent dealers of health care practice management software and other businesses. Between April 1997 and September 2002, Medical Manager acquired approximately 135 such companies, which it then either operated as subsidiaries or consolidated with its existing businesses. In many of these cases, Medical Manager paid at least a substantial part of the purchase price with Medical Manager stock.

## THE SCHEME

5. From about May 1997 through at least December 2002, the defendant,

**ROBERT DAVIDS,**

former vice-president for mergers and acquisitions of Medical Manager Corporation and its successor Medical Manager Health Systems, Inc.("Medical Manager"), located in Tampa, Florida, and others knowingly devised a scheme and artifice to defraud and obtain money from: (1) investors in Medical Manager and its parents; (2) Medical Manager; and (3) owners of companies acquired by Medical Manager by means of material false and fraudulent pretenses, representations, and promises.

6. It was part of the scheme and artifice to defraud that the defendant, **ROBERT DAVIDS,** executed the scheme and artifice while based in Hilton Head, South Carolina through the use of the United States mail, and caused some of the proceeds of the scheme and artifice to be transferred to and through the District of South Carolina by the United States mail.

7. It was further part of the scheme and artifice to defraud that the defendant, **ROBERT DAVIDS,** and his co-schemers caused companies acquired by Medical Manager to pay the defendant, **ROBERT DAVIDS,** and others kick-backs which were funded through increases in the purchase price paid by Medical Manager to the acquired company.

8.  It was further part of the scheme and artifice to defraud that the defendant, **ROBERT DAVIDS**, and his co-schemers, engaged in fraudulent accounting practices to inflate artificially the quarterly revenues of Medical Manager, in order to meet and exceed the earnings expectations of financial analysts and thereby defraud the investing public.

9.  It was further part of the scheme and artifice to defraud that the defendant, **ROBERT DAVIDS**, and his co-schemers, caused companies acquired by Medical Manager to fraudulently reclassify previously recognized sales revenue on their books as deferred income, so that such deferred income could subsequently be included as revenue by Medical Manager and its parents in later reporting periods in order to meet earnings expectations of financial analysts for Medical Manager and its parents and thereby defraud the investing public.

10. It was further part of the scheme and artifice to defraud that the defendant, **ROBERT DAVIDS**, and his co-schemers, caused companies acquired by Medical Manager to fraudulently inflate reserve accounts on their books, so that those reserves could be subsequently reversed in later reporting periods in order to artificially inflate earnings for Medical Manager and its parents in those periods in order to meet earnings expectations of financial analysts for Medical Manager and its parents and thereby defraud the investing public as to the true financial condition of Medical Manager.

11. It was further part of the scheme and artifice to defraud that the defendant, **ROBERT DAVIDS**, and his co-schemers, caused companies acquired by Medical

Manager to simultaneously enter into sham purchases of software from Medical Manager in connection with the acquisition which purchases were funded by increasing the purchase price paid to the acquired company by Medical Manager. These "round trip" transactions were used to create fraudulent revenues for Medical Manager in order to meet earnings expectations of financial analysts and thereby defraud the investing public as to the true financial condition of Medical Manager.

12.　　It was further part of the scheme and artifice that the co-schemers of the defendant, **ROBERT DAVIDS**, caused Medical Manager to book and record sales revenue before the revenue process was complete in accordance with Generally Accepted Accounting Principles and thereby fraudulently inflate Medical Manager's reported revenues in order to meet earnings expectations of financial analysts and thereby defraud the investing public as to the true financial condition of Medical Manager.

13.　　As a result of the scheme, the defendant, **ROBERT DAVIDS**, and his co-schemers, caused Medical Manager's total reported revenue to be overstated materially between June 1997 and at least December 2001.

14.　　As a result of the scheme, the defendant, **ROBERT DAVIDS**, and his co-schemers, caused Medical Manager's reported quarterly earnings per share to be overstated by at least $.01 per share in every quarter during the period June 1997 to at least December 2001.

15.　　As a result of the scheme, the defendant, **ROBERT DAVIDS**, received

kick-backs valued approximately $5,390,311.55.

## COUNT ONE

(Mail Fraud, 18 U.S.C. § 1341)

16. Paragraphs 1 through 15 are realleged and incorporated herein by reference.

17. On or about January 18, 2000, in the District of South Carolina and elsewhere, the defendant, **ROBERT DAVIDS**, aided and abetted by others, and for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, caused to be delivered by mail from the Northeast Regional offices of Medical Manager in Albany, New York, to the brother of the defendant, **ROBERT DAVIDS**, at P.O. Box 173, in Sumter, South Carolina, a check in the amount of $150,000 payable to a fictitious entity named "HR Consultants".

All in violation of Title 18, United States Code, Sections 1341 and 2.

*[signature]*
J. STROM THURMOND, JR. (MGB)
UNITED STATES ATTORNEY